952 So.2d 261 (2006)
Beverly A. HAYES, Appellant
v.
UNIVERSITY OF SOUTHERN MISSISSIPPI and Ted Socha, Appellees.
No. 2004-CA-02277-COA.
Court of Appeals of Mississippi.
August 22, 2006.
Rehearing Denied January 16, 2007.
*262 Bill Waller, Sr., attorney for appellant.
Rick Norton, Hattiesburg, Lee P. Gore, attorneys for appellees.
Before KING, C.J., GRIFFIS and BARNES, JJ.
GRIFFIS, J., for the Court.
¶ 1. Beverly Hayes brought suit against the University of Southern Mississippi ("USM") and Ted Socha for personal injuries. The circuit court dismissed the claims against Socha and entered judgment in favor of USM. Hayes appeals and argues (1) neither Socha nor USM is immune, and (2) they are absolutely liable for her injuries. We find no error and affirm.

FACTS
¶ 2. On August 27, 2000, Hayes began her first day as a student of the Mississippi Police Corps, run by USM. The Mississippi Police Corps is a federally funded *263 program which provides quasi-military police training. It is similar to the R.O.T.C. program, in that the students receive training, a stipend, room and board, and money to pay for college. In exchange, the students agree to serve at least four years in a local police department. Where local police academies have a ten-week program, the police corps training is a twenty-four week program. The training includes typical classroom settings and tests as well as physical fitness and field training.
¶ 3. The field training exercise in issue here took place at Camp Shelby. On August 31, at about 4:00 p.m., the students were taken into a room. The students were called out of the room one at a time to engage in a surprise combat drill. When selected, Hayes was given a padded helmet, mouth guard, arm padding, and groin padding. She was taken into a dimly lit gym. She saw Socha in full body padding. She now realized this was going to be a combat drill. She was thrown to the mat a total of three times. As a result, she suffered whiplash and a torn ACL, which required three knee surgeries. USM paid her medical bills until she reached maximum medical improvement.
¶ 4. Officers Bobby DeLeon, Weaver[1], Stan Coats, and Mark Rockwell were there to keep Hayes and Socha from falling off the mats. Officer Mark Dunston was in charge and gave commands to both Socha and Hayes, stopping the drill and checking on Hayes after each take down. Socha wrapped her arms close to her body to prevent her from hurting her arms in trying to catch herself. He also used his feet to keep from falling on top of her. Nevertheless, during the third fall, Hayes brought her right knee up between herself and Socha. Her knee was injured.

STANDARD OF REVIEW
¶ 5. In a claim based on the Mississippi Tort Claims Act, the trial judge sits as the finder of fact. Miss.Code Ann. § 11-46-13(1) (Rev.2002). "A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor, and his findings will not be reversed on appeal where they are supported by substantial, credible, and reasonable evidence." Donaldson v. Covington County, 846 So.2d 219, 222(¶ 11) (Miss. 2003). The circuit judge's findings of fact and conclusions of law will not be disturbed unless the judge abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Miss. Dep't of Transp. v. Trosclair, 851 So.2d 408, 413(¶ 11) (Miss.Ct. App.2003).

ANALYSIS
I. Did the trial court err finding Socha immune?
¶ 6. Hayes says Socha was not immune, because he committed the act with malice. Socha responds that he acted within the course and scope of his employment, without malice.
¶ 7. Mississippi Code Annotated section 11-46-7(2) provides in part:
[N]o employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. For the purpose of this chapter an employee shall not be considered as acting within the course and scope of his employment and a government shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted . . . malice. . . .
*264 The lower court found that Socha was acting within the course and scope of his employment during the two-minute drill. Therefore, the judge dismissed the case against Socha at the end of trial.
¶ 8. Dunston and Socha testified that Socha was under Dunston's instructions during the drill. Socha was instructed to tackle the student to the mat and hold her there until he was told to release her. Dunston testified that Socha obeyed the instructions and did not ad-lib any maneuvers. The two-minute drill was videotaped. There is nothing on the tape to indicate that Socha was doing anything other than what he was told. He tackled Hayes to the mat, released her when the whistle blew, restarted the drill when told to do so. Director of the police corps Keith Oubre opined that Socha's "performance and behavior was consistent with the way we conduct the drill with other students in the past and the way we continue to do it in the future and do now." Based on this, we find there was substantial credible evidence for the judge to conclude that Socha was acting within the course and scope of his employment at the time of Hayes's injuries.
¶ 9. Nevertheless, Hayes urges that Socha acted with malice. Hayes alleges that Socha threw her off the mat, causing her head to hit the gym floor. He then continued the drill even though she was disoriented as a result of this head injury. She further alleges that Socha was showing off to bystanders.
¶ 10. Whether or not Hayes hit her head on the gym floor was disputed. Unfortunately, the tape of the drill does not start until after Hayes's first fall. She is seen with her head and shoulders off the mat, moving around. Dunston was crouched nearby to check to see if she is okay. Socha apparently used his arms to try and encourage her to get up, then stood back away from her. Hayes testified that she was thrown off the mat. Dunston testified that she was thrown onto the mat, and she crawled off it. It is not until her second fall that she complained that she hit her head. Dunston checked on her and told her she was okay, because her head hit the mat, and she had on her helmet.
¶ 11. As for whether or not Hayes was disoriented as a result of the fall, the evidence was again in dispute. Hayes had suffered abuse as a child. She and the psychiatrist testified this caused her to freeze up when confronted by a male figure. Hayes also contributed this fear to the fact that she did not initially fight back in the combat drill.
¶ 12. Socha testified that he kept Hayes on the mat and took precautions during the take downs to try to prevent injury to her. We cannot say the judge erred in finding Socha did not act with malice. There was substantial credible evidence to support such a finding. We affirm the dismissal of Socha.
II. Was USM entitled to immunity?
¶ 13. Next, Hayes maintains it was error for the judge to apply police protection immunity in this case, because the training is too far removed from police protection, and, in the alternative, USM acted with reckless disregard. She also cites as error the judge's finding of discretionary function immunity because USM had a positive duty not to injure her. USM maintains it is entitled to both immunities.
A. Police protection immunity
¶ 14. The Mississippi Tort Claims Act ("MTCA") provides that a governmental entity is immune from a tort:
[a]rising out of any act or omission of an employee of a governmental entity engaged *265 in the performance or execution of duties or activities relating to police . . . protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury[.]
Miss.Code Ann. § 11-46-9(1)(c) (Rev. 2002). Hayes's first argument is that the police corps training is not an "activity related to police protection." The supreme court first addressed this phrase in McGrath v. City of Gautier, 794 So.2d 983 (Miss.2001). It considered whether negligent inspection and maintenance of the police vehicle was related to police protection. Id. at 984(¶ 7). Since it was not defined in the statute, the court looked to pre MTCA cases. Id. at 985-86 (¶¶ 10-12). These cases drew a distinction between governmental and proprietary functions and held that maintenance of a police vehicle was a governmental function. Id. at 986(¶ 12). Therefore, the McGrath court held that inspection and maintenance of a police vehicle was an activity relating to police protection. Id. at 987(¶ 16).
¶ 15. Subsequently, the supreme court considered whether a 911 operator is engaged in activities relating to police protection in Lee County v. Davis, 838 So.2d 243 (Miss.2003). The court cited the 911 statute, which defined the operator's responsibilities as processing emergency calls and dispatching emergency services provided by public safety agencies. Id. at 245(¶ 7). The court also noted the operators are trained and certified by the state. Id. at 245(¶ 8). Therefore the court held that processing emergency calls is related to police protection and is an integral link to police services. Id. at 245(¶ 8).
¶ 16. Under this authority, we hold that the Mississippi Police Corps training is an activity relating to police protection. The Mississippi Police Corps was established by the federal Police Corps Act. Its purposes are to "(1) address violent crime by increasing the number of police with advanced education and training on community patrol; and (2) provide educational assistance to law enforcement personnel and to students who possess a sincere interest in public service in the form of law enforcement." 42 U.S.C. § 14091 (2000). "The training sessions . . . shall be designed to provide basic law enforcement training, including vigorous physical and mental training to teach participants self-discipline and organizational loyalty and to impart knowledge and understanding of legal processes and law enforcement." 42 U.S.C. § 14097(d) (2000). Students are paid a stipend of $400 a week during training. 42 U.S.C. § 14097(f) (2000). While the students are not police officers while enrolled, a condition of their enrollment is that they will later serve as police officers. The Mississippi Police Corps's trainers and graduates are certified by the state. The police corps provides local law enforcement with college-educated, specialized, quasi-military trained police officers to assist in protecting against violent crime. Therefore, it is related to police protection. It also satisfies the government/proprietary distinction under McGrath, as police training is a governmental function.
¶ 17. Even though training is covered by the statute, if done with reckless disregard, then USM is not immune. Reckless disregard is "a higher standard than gross negligence and `embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.'" Collins v. Tallahatchie County, 876 So.2d 284, 287(¶ 8) (Miss.2004) (quoting Turner v. City of Ruleville, 735 So.2d 226, 230(¶ 19) (Miss.1999)). The focus is not on whether the officer intended to harm the plaintiff, but "whether the *266 officer intended to do the act that caused harm to come to the plaintiff." Turner v. City of Ruleville, 735 So.2d 226, 230(¶ 20) (Miss.1999). "In finding reckless disregard, the court must look at the totality of the circumstances" of the officer's conduct. Thomas ex rel. Thomas v. Miss. Dep't of Pub. Safety, 882 So.2d 789, 796(¶ 20) (Miss. Ct.App.2004). The common thread of these cases is "that the conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved." City of Jackson v. Lipsey, 834 So.2d 687, 693(¶ 21) (Miss.2003) (quoting Maldonado v. Kelly, 768 So.2d 906, 910-11(¶ 11) (Miss.2000)).
¶ 18. Hayes contends that Socha and USM acted with reckless disregard by throwing her off the mat and continuing the exercise despite the fact that she was disoriented from her head injury. As set out previously, whether or not these things happened was in dispute. There was substantial credible evidence that Socha did not cause her head to hit the gym floor and that she was not disoriented.
¶ 19. Additionally, there was evidence that the instructors took safety precautions. They engaged in a walk through of all curriculum and exercises before the students arrived. Dunston checked on Hayes after every take down. Socha's method of tackling the students was designed to prevent injury to them. He attacked only their upper body, protected their arms, and kept his weight from falling fully on them. The video reveals during the final fall that Socha's weight was leaning more towards Hayes's left side, rather than on her right side. His body would not have contacted her right side but for the fact that Hayes raised her right knee.
¶ 20. However, Hayes also cites reckless disregard in conducting the two-minute drill (1) so early in the training process, (2) without prior warning, (3) equally difficult for men and women, and (4) without leg padding for the students.
¶ 21. Oubre testified that federal law requires police corps training to be rigorous. He testified that the purpose of the two-minute drill was to expose the students to the violent nature of a physical attack and to evaluate the mental and physical strengths and weaknesses of the students to better tailor the training exercises to class and individual needs. Hayes's own expert, Jeff Curtis testified as to the value of surprise combat drills. There was testimony that women police officers are just as likely to face violent attacks and were just as physically capable. The decision not to give the cadets leg padding was in order to keep their legs mobile and to better facilitate their success in the exercise. Based on this, we find that there was substantial credible evidence to support the trial judge's finding that these actions did not constitute reckless disregard for Hayes's safety. We therefore affirm.
B. Discretionary function immunity
¶ 22. Because we affirm the grant of police protection immunity, we do not reach whether USM was entitled to discretionary function immunity as well.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] Officer Weaver's first name does not appear in the record.