# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2012-CA-00147-COA

**NATCHEZ-ADAMS SCHOOL DISTRICT**                           **APPELLANT**

**v.**

**TINA BRUCE**                                             **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/20/2011 |
| TRIAL JUDGE: | HON. LILLIE BLACKMON SANDERS |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT O. ALLEN |
| | WILLIAM ROBERT ALLEN |
| | JOHN CHADWICK WILLIAMS |
| ATTORNEYS FOR APPELLEE: | PHILIP ELMER CARBY |
| | EDGAR HYDE CARBY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | FOUND APPELLANT LIABLE FOR APPELLEE'S INJURIES AND AWARDED APPELLEE $488,000 IN DAMAGES |
| DISPOSITION: | AFFIRMED - 09/09/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**ROBERTS, J., FOR THE COURT:**

¶1.    Tina Bruce sued the Natchez-Adams School District (NASD) after she tripped over a section of conduit that protruded from the surface of a driveway in front of NASD's administrative building.  After a bench trial, the Adams County Circuit Court awarded Bruce $488,000 in damages.  NASD appeals.  According to NASD, it is immune to Bruce's claim under either the discretionary-function exemption or the dangerous-condition exemption of the Mississippi Tort Claims Act (MTCA).  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. In July 2008, Bruce visited NASD's administrative building in Natchez, Mississippi, to deliver a job application. As Bruce was walking across the concrete driveway in front of the administrative building, she tripped over a section of conduit that protruded more than an inch above the driveway's surface. At trial, Bruce testified that she had two bulging discs in her back and leg pain as a result of her fall. She attempted to alleviate her injuries through physical therapy and pain management. When those remedies produced unsatisfactory results, she underwent spinal surgery. Her necessary medical expenses exceeded $143,000. The circuit court noted that Bruce will have to walk with a cane for the rest of her life. The circuit court further noted that Bruce was permanently impaired and has functional limitations and "work restrictions." Additionally the circuit court stated that Bruce "has endured pain and suffering and will continue to do so for the rest of her life" and "[h]er family life is altered."

¶3. The protruding conduit that caused Bruce's fall contained the power supply to a lit sign and architectural lighting in front of the administrative building. NASD had intended for the conduit to be recessed into an expansion joint in the driveway. But due to the length of the conduit, the pitch of the surface of the driveway, and continued vehicular traffic, the conduit tended to rise above the driveway.

¶4. Before Bruce tripped over the conduit, NASD had attempted to prevent the conduit from protruding above the surface of the driveway. Dr. Wayne Barnett, the former director of operations for NASD, testified that the conduit was a "slip, trip, and fall hazard," so he "got the ball rolling to get it fixed." Willie Ellis, an electrician for NASD, attempted to

2

prevent the conduit from protruding above the surface of the driveway by drilling a "spike" into the driveway and then bending it over the conduit to hold it in place. Dr. Barnett inspected Ellis's work and became satisfied that the conduit was no longer a trip hazard. However, Dr. Barnett also testified that he did not check on the conduit after his initial inspection to determine whether the "spike" was still preventing the conduit from protruding above the surface of the driveway. Over time, the conduit became dislodged from the "spike" and again protruded approximately two inches above the surface of the driveway.

¶5. NASD employees Isaac King and Jimmy Wilson testified that the conduit made a rattling noise when a car drove over it. They also noticed that the conduit was protruding above the surface of the driveway. They told NASD maintenance supervisor Demestra Winding about the protruding conduit at least once before Bruce fell.

¶6. As previously mentioned, NASD argued that it was entitled to immunity under the discretionary-function-exemption and the dangerous-condition-exemption provisions of the MTCA. The circuit court disagreed and awarded Bruce $488,000 in damages. NASD appeals.

## ANALYSIS

### I. DISCRETIONARY-FUNCTION EXEMPTION

¶7. NASD argues that it was entitled to immunity under the discretionary-function exemption of the MTCA. In the context of a lawsuit alleging that a governmental entity is liable for negligence, the MTCA is a plaintiff's exclusive remedy. *S. Cent. Reg'l Med. Ctr. v. Guffy*, 930 So. 2d 1252, 1255 (¶7) (Miss. 2006). "Questions concerning the application of the MTCA are reviewed de novo." *Miss. Dep't of Pub. Safety v. Durn*, 861 So. 2d 990,

3

994 (¶7) (Miss. 2003). "Immunity is a question of law." *Id.* However, we will not disturb the circuit court's factual findings if there is substantial credible evidence to support them. *City of Natchez v. Jackson*, 941 So. 2d 865, 869 (¶9) (Miss. Ct. App. 2006).

¶8. The discretionary-function exemption is set forth in Mississippi Code Annotated section 11-46-9(1)(d) (Rev. 2012), which provides:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]

"A duty is discretionary when it is not imposed by law and depends upon the judgment or choice of the government entity or its employee." *Miss. Transp. Comm'n v. Montgomery*, 80 So. 3d 789, 795 (¶19) (Miss. 2012). "A duty is ministerial if it is positively imposed by law and required to be performed at a specific time and place, removing an officer's or entity's choice or judgment." *Id.*

¶9. In a recent opinion, the Mississippi Supreme Court significantly changed the manner in which we are to analyze questions regarding the discretionary-function exemption to the MTCA. Overruling nine prior decisions, the supreme court held that "[i]t is the function of a governmental entity – not the acts performed in order to achieve that function – to which immunity does or does not ascribe under the MTCA." *Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 138 (¶10) (Miss. 2013). In other words, we are required to "look at the *function* performed – not the *acts* that are committed in furtherance of that function – to determine whether immunity exists." *Id.* at 136 (¶8). In *Little*, the function at issue was the Mississippi Department of Transportation's statutory obligation to maintain and repair state highways.

4

*Id.* at 134 (¶2). The applicable statute in *Little* provides:

> It shall be the duty of the state highway commission to have the state highway department maintain all highways which have been or which may be hereafter taken over by the state highway department for maintenance in such a way as to afford convenient, comfortable, and economic use thereof by the public at all times. To this end it shall be the duty of the director, subject to the rules, regulations[,] and orders of the commission as spread on its minutes, to organize an adequate and continuous patrol for the maintenance, repair, and inspection of all of the state-maintained state highway system, so that [the] highways may be kept under proper maintenance and repair at all times.

Miss. Code Ann. § 65-1-65 (Rev. 2012). The supreme court held that because the Department had a statutory duty "to maintain and repair state highways, that duty – and all acts in furtherance of that duty – are ministerial unless . . . another statute makes a particular act discretionary." *Little*, 129 So. 3d at 138 (¶11). As a result, the supreme court concluded that "[t]he Department [was] not entitled to discretionary-function immunity for failure to properly maintain and repair highways because that function is ministerial." *Id.*

¶10. NASD argues that it had no statutory duty to remedy the exposed conduit. It reasons that it could use its judgment in determining when and how to alleviate the protruding conduit. But Bruce claims that Mississippi Code Annotated section 37-7-301(d) (Rev. 2013) supports her position that NASD had a ministerial duty to remedy the exposed conduit. We agree.

¶11. Section 37-7-301(d) states that a school board is "responsib[le] for the erection, repairing[,] and equipping of school facilities and . . . necessary school improvements[.]" Bruce's injuries were caused by the protruding conduit that powered the administrative building's sign and its architectural lighting. To prevent Bruce's injuries, NASD would have had to repair the protruding conduit. It is reasonable to conclude that the NASD

5

administrative building is a "school facility." The conduit that powers the administrative building's sign and a portion of its external lighting, which is located immediately outside of the main entrance to the building, is an integral part of that "school facility."

¶12. Following *Little*, we find that because NASD has a statutory duty to repair a school facility, all acts in furtherance of that duty are ministerial. Furthermore, the repair of improperly protruding conduit that poses a safety hazard necessarily involves the repair of a school facility. It follows that NASD had a ministerial duty to repair the protruding conduit, and it is not entitled to discretionary immunity. Accordingly, the circuit court did not err when it refused to apply the discretionary-immunity exemption of the MTCA. There is no merit to this issue.

## II. DANGEROUS-CONDITION EXEMPTION

¶13. Next, NASD claims that it is immune from Bruce's claim under the dangerous-condition exemption of the MTCA as set forth in Mississippi Code Annotated section 11-46-9(1)(v) (Rev. 2012). Under section 11-46-9(1)(v), a governmental entity is immune from liability for a claim:

> Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care[.]

The circuit court declined to find that NASD was entitled to immunity under the dangerous-condition exemption. Specifically, the circuit court – sitting as the fact-finder – concluded that "the dangerous condition of the conduit was not open and obvious, and . . . Bruce was

6

not negligent." We agree with the circuit court's conclusion.

¶14. It was within the circuit court's discretion to find that the protruding conduit was a dangerous condition on NASD's property. It was in the vicinity of the entrance to the NASD administrative building. Dr. Barnett testified that the protruding conduit was a "slip, trip, and fall hazard." Additionally, there was testimony that the finish of the conduit was similar to the color of the surface of the driveway. The similarity between the finish of the conduit and the color of the driveway also supports the conclusion that it was not obvious to someone who was exercising due care.

¶15. The dissent would reweigh the evidence and find that the circuit court erred when it held that the protruding conduit was not open and obvious. However, the dissent ignores our standard of review. In a claim based on the Mississippi Tort Claims Act, the circuit court is the fact-finder. Miss. Code Ann. § 11-46-13(1) (Rev. 2012). "A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor, and his findings will not be reversed on appeal where they are supported by substantial, credible, and reasonable evidence." *Hayes v. Univ. of S. Miss.*, 952 So. 2d 261, 263 (¶5) (Miss. Ct. App. 2006) (quoting *Donaldson v. Covington Cnty.*, 846 So. 2d 219, 222 (¶11) (Miss. 2003)). "The circuit judge's findings of fact and conclusions of law will not be disturbed unless the judge abused his discretion, was manifestly wrong [or] clearly erroneous, or [applied] an erroneous legal standard . . . ." *Id.* (quoting *Miss. Dep't of Transp. v. Trosclair*, 851 So. 2d 408, 413 (¶11) (Miss. Ct. App. 2003)). In reweighing the evidence, the dissent attaches a picture taken from a camera that was sitting on the ground. However, Bruce certainly did not see the protruding conduit from that unrealistic and unreasonable perspective. Instead,

7

she saw it from the height of someone walking across the parking lot. Other pictures in evidence were taken at eye level. Suffice it to say, the protruding conduit is not nearly as obvious from that perspective. It was within the circuit court's discretion to find that from Bruce's perspective, the protruding conduit was not obvious based on the fact that the finish of the conduit looked similar to the surface of the driveway, and it was placed along an existing expansion joint in the driveway.

¶16. The dissent also quotes a portion of Bruce's testimony during cross-examination to support the conclusion that the protruding conduit was open and obvious to Bruce. However, the dissent omits the following testimony during Bruce's direct examination:

> Q. All right. Okay. Ms. Bruce, what happened then? You left the building?
>
> A. I left the building, I was walking towards my car, all of a sudden, I fell down. My purse - -
>
> Q. Would you describe to the [c]ourt how you fell? I mean, just - -
>
> A. Okay. I fell down. I tried to use my hands to catch myself. My hands, and my left knee, and my toes were scraped, they were bleeding, too. Ms. Mamie Moore . . . helped me get off the ground. *Then I looked around to see what had caused me to fall, and I saw that the pipe had caused me to fall.*
>
> Q. Okay. Now, before you fell, did you know that the pipe was above the level of the concrete?
>
> A. *No, sir.*
>
> Q. How were you able to determine what had caused you to fall?
>
> A. When I got up - - when Ms. Mamie Moore helped me get up, I looked around and I saw that the pipe was above the surface.
>
> Q. As you approached it before you fell, were you able to determine that

8

the pipe was above the surface of the concrete?

A.    *No, sir.*

Q.    Why is that?

A.    *Because it's the same color as the concrete. On both of the ends, I think it was like - - it was bent down in the ground, but I guess that certain area, you really couldn't tell that it was, you know, risen above the surface.*

(Emphasis added). Additionally, Bruce explained her prior deposition testimony during cross-examination.

Q.    Okay. So, there's no question you saw that pipe?

A.    Umm-hmm.

Q.    You saw the condition it was in?

A.    *No, I couldn't see the condition it was in.*

Q.    All right.

A.    *After I fell, I . . . saw the condition it was in after I got back up.*

Q.    All right. Why didn't you add that when you were telling me that [during your deposition]? Why didn't you say, ["]but I could see the pipe,["] or ["]I couldn't see it was raised?["]

A.    *Because I couldn't see when it was raised.*

Q.    Why wouldn't you have said that when you were asked those questions that day?

A.    I don't know. I don't know.

Q.    Then I went on down on page 27, line 14. I said, "Let me ask you a question." You said you actually saw the pipe before you got to it, and you said, "Yes, it was visible," didn't you?

A.    Yeah, I said that.

9

Q. You didn't say then, "It was visible, but I couldn't see that it was raised," did you?

A. *No, I didn't see it was raised.*

Q. What you saw was that pipe exactly like the picture your sister took, wasn't it? What you saw was just like [it appeared in three photographs], wasn't it?

A. Yes.

Q. All right. You can see those were raised, can't you?

A. *No, you can't. You've got to really look at it to see it. At the time when I fell, I did not know that the pipe was risen like that until I got off the ground and I looked and seen it.*

(Emphasis added). Later, Bruce testified that she "did not see that pipe was raised like that in the middle. When [she] got off the ground, then [she] went and [she] saw the pipe had raised up." Bruce also testified that "when [she] hit the ground, [she] got up, and [she] realized the pipe had risen. [She] didn't know at the time."

¶17. To summarize, Bruce testified that she did not realize that the conduit was protruding above the surface of the concrete. Counsel for NASD repeatedly attempted to impeach her with her prior statements, but Bruce explained them. Substantial credible evidence supports the circuit court's conclusion that the protruding conduit was not open and obvious.

¶18. Furthermore, there was substantial credible evidence that NASD had notice of the protruding conduit before Bruce tripped over it. Mamie Moore helped Bruce inside the building after she fell. Both Moore and Bruce testified that while they were in the office, one employee stated that he and other employees knew about the protruding conduit. As discussed above, two NASD employees told a maintenance supervisor about the protruding

10

conduit before Bruce tripped over it. It was within the circuit court's discretion to find that NASD had sufficient time to either repair the protruding conduit or warn people about it. Finally, there was no evidence that NASD placed a warning or caution sign near the protruding conduit, or took any other measures to warn people about the conduit. In light of the evidence before the circuit court, it did not abuse its discretion when it found that NASD was not entitled to immunity under the MTCA's dangerous-condition exemption. It follows that there is no merit to this issue.

¶19. **THE JUDGMENT OF THE ADAMS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**IRVING, P.J., DISSENTING:**

¶20. Because I believe that the majority errs in its interpretation of what constitutes a school facility, I dissent. I would reverse and render the judgment of the circuit court, as I find no statutory mandate requiring school districts to repair conduits embedded in concrete driveways, when the sole purpose of the conduit is to provide an electrical current to light a sign on the lawn of the school premises.

¶21. The statute that is the subject of the majority's peculiar construction is Mississippi Code Annotated section 37-7-301(d) (Rev. 2013), which provides that "[t]he school boards of all school districts shall have the following powers, authority[,] and duties in addition to all others imposed or granted by law, to wit: . . . responsibility for the erection, repairing, and equipping of school facilities and the making of necessary school improvements."

11

¶22. A plain reading of this statute shows that the only duty imposed is one to erect, repair, and equip school facilities, and to make necessary school improvements. It is clear that the concrete driveway provides only convenient ingress and egress to the school building and is not a school facility. And the conduit embedded in the driveway does not transform either the conduit or the driveway into a school facility simply because the conduit carries an electrical wire to an exterior sign identifying the school facility. Neither the concrete driveway, the embedded conduit in it, nor the lighted sign is a prerequisite to the school district's execution of its mission—to provide facilities for use in educating the boys and girls of the school district. It necessarily follows that I disagree with the majority's conclusion that the conduit is an integral part of the school facility. There is no statutory requirement that school districts erect signs identifying school facilities. Hence, it seems unreasonable and illogical to suggest that a school district that has no statutory duty to erect or place any kind of identifying signs on school property somehow becomes mandated to maintain the electrical conduit that provides electrical power to the sign that the school district, employing its discretionary authority, voluntarily places on school property.

¶23. The majority's interpretation of the phrase "school facility" is much too broad and is without statutory underpinning. I find that maintenance of the conduit within the concrete driveway was discretionary with NASD. "A duty is discretionary when it is not imposed by law and depends upon the judgment or choice of the government entity or its employee." *Miss. Transp. Comm'n v. Montgomery*, 80 So. 3d 789, 795 (¶19) (Miss. 2012) (citing *Miss. Dep't of Mental Health v. Hall*, 936 So. 2d 917, 924-25 (¶17) (Miss. 2006)). Accordingly, even if the government entity or its employee has not exercised due care in performing a

12

duty, immunity is still granted when that duty is a discretionary one. *See* Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012).

¶24.  Consequently, NASD cannot be held liable for Bruce's injuries, as it is granted immunity under the Mississippi Code Annotated section 11-46-9(1)(d), which provides:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]

¶25.  Even if I were to concede, and I do not, that keeping the conduit sufficiently buried beneath, or flush with, the surface of the concrete driveway is mandated by NASD's statutory responsibility to make necessary school improvements, thereby depriving NASD of the protection of the discretionary immunity provided by section 11-46-9(1)(d), I still would find that the trial court erred in finding NASD liable for Bruce's injuries because the record clearly demonstrates that the dangerous condition was obvious to one exercising due care.

¶26.  Mississippi Code Annotated section 11-46-9(1)(v) (Rev. 2012) provides:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

* * * *

> [a]rising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is **obvious** to one exercising due care[.]

(Emphasis added).

¶27. If NASD allowed a dangerous condition to exist on its property, our law is well settled that, on the facts of this case, it had a corresponding common-law duty to warn others of the dangerous condition. However, section 11-46-9(1)(v) makes it clear that no liability attaches where the condition is obvious to one exercising due care. A portion of the conduit was protruding up by at least one inch from the surface of the driveway. (See the appendix to this dissent). Therefore, in my judgment, it cannot be reasonably argued that the conduit, of a different color, protruding a little over an inch from the surface of the concrete driveway was not obvious to one using due care. The majority states that the picture of the conduit shown in the appendix to this dissent does not accurately depict what Bruce saw and emphatically asserts that Bruce did not see the protruding conduit. It seems to me that the record speaks more eloquently than anything that the majority or I could say regarding what Bruce saw. During cross-examination, Bruce testified as follows as to what she did see:

> Q.  Now, do you recall when I was taking your deposition, do you recall my asking you to tell me what happened when you walked out of the door of the building going back towards the van, and you're saying, "Like I said, I saw the pipe, but I continued on." Do you recall saying that?
>
> A.  Yes.
>
> . . . .
>
> Q.  You said, "Like I said, I saw the pipe, but as I continued to walk, I tripped. . . ."
>
> A.  Umm-hmm.

¶28. I agree with the majority that this Court is required to affirm the factual findings of

14

a circuit judge sitting as the trier of fact if the findings "are supported by substantial, credible, and reasonable evidence." *City of Newton v. Lofton*, 840 So. 2d 833, 836 (¶7) (Miss. Ct. App. 2003). In this case, I believe the circuit judge's finding that the raised conduit was not obvious is clearly erroneous and manifestly wrong and that the circuit judge abused her discretion in so finding.

¶29. For the reasons presented, I dissent. I would reverse and render the judgment of the circuit court.

