# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00469-COA

**KATHERINE LEMAY; H.L., A MINOR, BY AND THROUGH HER MOTHER AND NEXT FRIEND KATHERINE LEMAY; H.O., A MINOR, BY AND THROUGH HER MOTHER AND NEXT FRIEND KATHERINE LEMAY; AND C.L., A MINOR, BY AND THROUGH HIS MOTHER AND NEXT FRIEND KATHERINE LEMAY**

**APPELLANTS**

**v.**

**CITY OF BILOXI, MISSISSIPPI**

**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/13/2023 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | DANIEL MYERS WAIDE |
| ATTORNEYS FOR APPELLEE: | J. HENRY ROS |
| | ZACHARY C. CRUTHIRDS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 06/04/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND SMITH, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.     Katherine Lemay appeals the Harrison County Circuit Court's grant of summary judgment in favor of the City of Biloxi in a suit she filed on behalf of herself and her three minor children for the injuries they sustained when the vehicle she was driving collided with one driven by Victor Tacorchick, a Biloxi police officer. Finding that Tacorchick and the City were immune from suit under the Mississippi Tort Claims Act, Mississippi Code Annotated section 11-46-9 (Rev. 2019) ("MTCA") and that Lemay's criminal activity of

speeding precluded recovery, the circuit court granted the City's amended motion for summary judgment. On appeal, Lemay argues (1) that Tacorchick was not immune simply because he was on duty, (2) that Tacorchick's negligent driving exhibited a reckless disregard for the safety of the public, and (3) that Lemay was not involved in criminal activity that precluded her recovery. Upon review of the record and relevant precedent, although we disagree with the circuit court's finding that Lemay was precluded from recovery because of her alleged criminal activity, we affirm its grant of summary judgment in favor of the City on the issue of immunity.

**Facts and Procedural History**

¶2. At the time of the accident, Officer Tacorchick had been employed with the Biloxi Police Department for six years. He had never been in an accident on or off duty prior to this incident.

¶3. On December 5, 2021, Tacorchick was assigned to booking on the night shift, which started at 5:45 p.m. According to the dispatch log, at 5:52 p.m., Tacorchick left the station in a marked SUV patrol vehicle to respond to an assistance-needed call from Officer Steven Kinsey, who was investigating a suspicious person at the Elk's Lodge on Highway 90. Tacorchick arrived within a minute and three minutes later, he radioed in that the call had been "cleared," i.e. handled, and he was returning to the station.

¶4. To return to the station, Tacorchick drove his vehicle east on Highway 90, planning to turn left onto Porter Avenue. He had no emergency lights activated and was merely

driving back to the station. As he approached the intersection, he moved into the left-turn lane. The light was green for traffic traveling in both directions, and to safely make his turn, Tacorchick was required to yield to oncoming westbound traffic.

¶5. Katherine Lemay's car, a 2013 Chevy Impala, was one of those oncoming vehicles traveling west. Like Tacorchick, she too had never been in an accident. As she neared the intersection, she was in the right lane of traffic. Tacorchick turned in front of her, and the vehicles collided. Lemay said when she first saw Tacorchick, it was too late for her to stop. Tacorchick admitted that he saw Lemay's vehicle before the accident and that nothing prevented him from waiting for her to pass. He said there was no emergency or need for him to get back to the station because others could handle his duties until he returned. Tacorchick explained that he believed he had enough time to complete his turn before Lemay entered the intersection. He admitted that he failed to yield her the right-of-way and that he "may have" misjudged her speed. He said he based her speed on what he had learned as a patrol officer about gauging the speed of a vehicle when coming out of a curve. Tacorchick also said that the car traveling behind Lemay caused him to misjudge her speed. According to Tacorchick, he was disciplined by the department, which found him to be at fault for the accident.

¶6. Lemay, who worked as the general manager of Yul's restaurant in Biloxi, had been off the week that the accident occurred. She went to Gatlinburg with some friends and when she returned on Sunday, December 5, 2021, she picked up her children who had stayed with Lemay's mother while Lemay was out of town. Lemay and her three children, ages fourteen,

3

eleven, and ten, were returning to their home when the accident occurred. Lemay explained that she exited I-10 and had just gotten onto Highway 90. The speed limit on Highway 90 was thirty-five miles per hour. She estimated that prior to approaching the intersection with Porter Avenue, she was going no more than forty-five miles per hour, and had slowed down to thirty-five miles per hour just before the collision. She was on her hands-free phone with a co-worker at the time. By the time she saw Tacorchick's vehicle, she said she was unable to stop. The force of the collision pushed Tacorchick's patrol car into another vehicle, driven by Octavia Brister, which was traveling south on Porter Avenue but stopped at the light.

¶7.    Other law enforcement officers came to the scene, among them Erick Hicks who prepared the official accident report. According to that report, Hicks concluded that Lemay was driving properly, that she was not distracted, and that she did not exceed the speed limit. Hicks noted that Lemay did not contribute to the accident and that she tried to avoid the accident by braking and steering to the right. Hicks reported that at the time, Tacorchick was performing "no special function," i.e. not responding to a safety or a service call. Hicks indicated that at the time of the crash, Tacorchick failed to yield the right of way and took no action to avoid the accident. Both vehicles sustained disabling damage and had to be towed from the scene.

¶8.    As a result of the collision, Lemay's vehicle was totaled, and Lemay's right knee and neck were bruised. One of Lemay's daughters suffered a lacerated liver and broken ribs. She was hospitalized at the Children's Hospital in New Orleans for ten days and was on bed

rest for a considerable time after her discharge. Another of Lemay's children suffered bruising on his face and a bloody nose. The accident left two of the three minors with a fear of riding in a car near intersections, at night, and in general.[1]

¶9. On December 9, 2021, Lemay filed a notice of claim with the City as required under the MTCA. She sought damages for the injuries she and her children sustained as a result of the collision. Thereafter, on March 15, 2022, she filed her complaint in the Harrison County Circuit Court, individually and as a mother and next friend of her minor children. She alleged that Tacorchick acted in reckless disregard for her and her children's safety and that she was not engaged in any criminal activity at the time. On May 9, 2022, the City answered the complaint and denied liability, raising, among other defenses, the law enforcement immunity exemption codified at Mississippi Code Annotated section 11-46-9(1)(c).[2]

---

[1] One child, whose door would not open due to the damage, was trapped in the vehicle and had to wait until law enforcement could extricate both her and Lemay with the "jaws of life."

[2] Mississippi Code Annotated section 11-46-9(1)(c) provides:

A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

. . . .

(c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

¶10.   The parties engaged in discovery, taking depositions, exchanging interrogatories, and propounding requests for documents and requests for admissions. They obtained a videotape of the accident that had been recorded at the Biloxi Lighthouse nearby.

¶11.   On November 14, 2022, Lemay filed a motion for partial summary judgment. She argued that the City was not immune (1) because the heightened standard of "reckless disregard" did not apply since Tacorchick was not engaged in police protection, and in the alternative, (2) because Tacorchick acted with reckless disregard for her and her children's safety when he failed to yield the right-of-way and collided with Lemay's car.

¶12.   On December 2, 2022, the City filed a motion for summary judgment, arguing that, as a matter of law, it was immune from suit under the first-responder immunity exemption in the Mississippi Tort Claims Act and, thus, it was not liable for the injuries sustained by Lemay and her children. On January 25, 2023, the City amended its motion for summary judgment to withdraw an affidavit it had obtained from Investigator Hicks.[3]

¶13.   On April 10, 2023, the circuit court granted the City's Amended Motion for Summary

---

[3]   The City had previously submitted an affidavit from Hicks, stating that he was a certified accident/crash reconstructionist. He said that at the time of the accident he had not calculated Lemay's speed. Since then, he viewed video footage of the accident obtained from the Biloxi Lighthouse, and, using a formula for calculating speed accepted among reconstructionists, he determined that Lemay was traveling at a speed of 60.49 miles per hour in the thirty-five mile per hour speed zone. As an expert, Hicks opined that Lemay's speed was a significant contributing cause of the accident. Lemay steadfastly denied this. At the hearing on both parties' motions for summary judgment, the City's attorney said he filed the amended motion and withdrew Hicks's affidavit because Hicks had since been deposed and had apparently viewed a recording of the original video to come to his conclusions. Instead of Hicks's opinions being challenged under *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), the City chose to withdraw Hicks's affidavit.

Judgment, finding that although Tacorchick was acting in the course and scope of his employment, he did not act in reckless disregard for the safety and well-being of Lemay and her children. In addition, the court found that Lemay was engaged in the criminal act of speeding at the time of the accident. Because there was a causal nexus between her injuries and her speeding, she was precluded from recovery.

¶14. On April 18, 2023, Lemay filed her notice of appeal. On appeal she raises three issues: (1) whether law enforcement officers are immune from suit for negligence simply because they are on duty, (2) whether Tacorchick acted with reckless disregard for the safety of Lemay and her children, and (3) whether the circuit court erred in finding that the City was not liable because Lemay may have been speeding.

**Standard of Review**

¶15. "On appeal, we review de novo the trial court's dismissal based on MTCA immunity." *Williams v. City of Batesville*, 313 So. 3d 479, 482 (¶7) (Miss. 2021). "Immunity is a question of law and is a proper matter for summary judgment." *Mitchell v. City of Greenville*, 846 So. 2d 1028, 1029 (¶8) (Miss. 2003). In reviewing summary judgment decisions, all evidence is viewed in the light most favorable to the non-movant. *Id*. at (¶9).

> Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Thomas v. Shed 53 LLC*, 331 So. 3d 66, 70 (¶10) (Miss. Ct. App. 2021) (quoting *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013)) (applying de novo review); *accord*

7

M.R.C.P. 56(c). In the case at hand, no party contends that there were material facts in dispute precluding summary judgment.

**Discussion**

¶16. Under section 11-46-9(1)(c) of the MTCA, which deals with the liability of police officers, a governmental entity and its employees are immune from suit if the employee acted "in the performance or execution of duties or activities relating to police or fire protection" and had not acted with reckless disregard for the safety of others. Nor is the employee and its governmental employer liable if at the time of the injury the person injured is engaged in criminal activity. In this case, the circuit court found that Tacorchick was engaged in police protection at the time of the accident and that he had not acted with reckless disregard. Thus, the City was immune from suit.

I. **Whether Tacorchick was engaged in police protection duties at the time of the accident.**

¶17. Lemay admits that Tacorchick was on duty when he was driving back to the police station from the officer-assist call. However, she argues that the issue is whether his return to the station was related to police "protection" covered by the MTCA, or simply a police "function," which she considers would not be covered. Merely being in uniform and driving a police car, Lemay claims, was not the type of activity that the Legislature intended to be protected by MTCA immunity. The State, however, cites several cases in which appellate courts have held that the term "police protection activity" is to be broadly construed, encompassing more than police pursuits or the apprehension of criminals.

8

¶18. Lemay urges us to undertake a statutory construction analysis of the meaning of the phrase "duties related to police protection" and what activities fit under it. However, the Mississippi Supreme Court already did this in *McGrath v. City of Gautier*, 794 So. 2d 983 (Miss. 2001). There the Court acknowledged that the language in section 11-46-9(1)(c) does not precisely define what duties are related to police protection. *Id.* at 985 (¶9). Because the issue had not been definitively decided, the Court began by reviewing prior cases where the Court considered certain police actions as clearly police protection activities such as aiming a weapon at a person the officer mistakenly believed to be a real suspect, or acting pursuant to a valid arrest warrant and not in reckless disregard for the arrestee's safety, or administering a roadside sobriety test. *Id.* at (¶10). In *McGrath*, specifically, the officer was driving his patrol car while on duty when the brakes failed, causing him to collide with the rear end of McGrath's vehicle. *Id.* at 983 (¶2). The challenged activity was the negligent maintenance of the brakes in the officer's car. *Id.* at 985 (¶11). The Supreme Court agreed with the trial court's holding that maintenance of a police vehicle is an action of police protection. *Id.* The Court noted several pre-MTCA cases where the courts engaged in a proprietary versus governmental function analysis to determine liability because municipalities were not immune when their employees were undertaking governmental functions. *Id.* at 985-86 (¶12). Citing a 1918 case, the Supreme Court stated that there are

> some duties the nature of which as governmental is too well settled to be disputed, such as the establishment and maintenance of schools, hospitals, poorhouses, fire departments, police departments, jails, workhouses, and police stations, and the like.

9

*Id.* at 986 (¶13) (citing *City of Hattiesburg v. Geigor*, 118 Miss. 676, 79 So. 846 (1918)). The Supreme Court continued, explaining that the Legislature enacted the MTCA, which embodied the same rationale that a city is immune because the establishment of a police force is a governmental rather than a proprietary function. *Id.* at 986-87 (¶14). The *McGrath* Court concluded:

> [B]ecause an injury is caused by a police vehicle, operated and maintained by the police department, liability will automatically be precluded because the maintenance of a police department is a governmental function, for which municipalities are exempt. We, therefore, affirm the ruling of the trial court.

*Id.* at 987 (¶16).

¶19. Since *McGrath*, the appellate courts have considered other law enforcement activities and held them to be related to police protection, among them 911-dispatcher activities, *Lee County v. Davis*, 838 So. 2d 243, 245 (¶8) (Miss. 2003), and police training activities, *Hayes v. Univ. of S. Miss.*, 952 So. 2d 261, 265 (¶16) (Miss. Ct. App. 2006). "Immunity under the MTCA can apply in cases where the employee is engaged in "*ordinary* duties related to police and fire protection." *See Herndon v. Miss. Forestry Comm'n*, 67 So. 3d 788, 793 (¶11) (Miss. Ct. App. 2010) (forest ranger driving a truck to pick up a bulldozer to be used to create fire lanes and remove debris was engaged in activity related to fire protection); and *Maldonado v. Kelly*, 768 So. 2d 906, 908 (¶2) (Miss. 2000) (officer driving patrol car to the service shop for regular maintenance was afforded immunity under the MTCA). Even driving a county sheriff's vehicle to retrieve keys to the county's gas pumps has been found to be related to police protection. *Reynolds v. County of Wilkinson*, 936 So. 2d 395, 397 (¶7)

(Miss. Ct. App. 2006). In that case, we pointed out that engaging in duties related to police protection "does not require that a law enforcement officer be then engaged in direct action to apprehend a criminal." *Id.* at (¶6). We stated:

> The *McGrath* court reasoned under precedents that predated the Tort Claims Act the relevant distinction revolved around whether the municipality acted in a governmental or proprietary capacity. The court held that under the Tort Claims Act, when an injury is caused by a police vehicle, operated and maintained by the police department, liability will automatically be precluded because the maintenance of a police department is a governmental function, for which municipalities are exempt.

*Id.* (citations and internal quotation marks omitted.)

¶20. In this case, Lemay agrees that Tacorchick's dispatch to the Elk's Club was legitimate police activity, but his return to the station, she argues, was not. However, she presents no authority to support her contention. Moreover, Tacorchick was returning from a service call, not merely coming to work from home. *See Maxwell v. Panola County*, No. 2021-CA-01001-COA, 2023 WL 2132171, at *2 (¶192) (Miss. Ct. App. Feb. 21, 2023) (immunity afforded to a deputy who was in an accident on his way back to the Sheriff's office from handling a service call), *cert. denied*, 369 So. 3d 996 (Miss. 2023). Moreover, Tacorchick's return to the station was necessary for him to continue the duties he was assigned. Under the statutory construction given to us by the Supreme Court in *McGrath*, and clear precedent thereafter, we find no error in the circuit court's finding that Tacorchick was engaged in police protection activity at the time the accident occurred.

    **II.**    **Whether Tacorchick acted with reckless disregard for the safety of Lemay and her children.**

11

¶21. Because Tacorchick was performing legitimate police protection duties, he can only be liable for the injuries of Lemay and her children if he acted with reckless disregard for her safety at the time of the accident. *Phillips v. City of Oxford*, 368 So. 3d 317, 323 (¶21) (Miss. 2023) (citing Miss. Code Ann. § 11-46-9(1)(c)). "By requiring a finding of 'reckless disregard of the safety and well-being of others,' the Legislature set an extremely high bar for plaintiffs seeking to recover against a city for a police officer's conduct while engaged in the performance of his or her duties." *Id.* at (¶22) (citing *City of Jackson v. Presley*, 40 So. 3d 520, 523 (¶12) (Miss. 2010)).

¶22. "Reckless disregard" has been discussed by our courts in numerous cases with a variety of different facts. In *Turner v. City of Ruleville*, 735 So. 2d 226, 227 (¶2) (Miss. 1999), the Mississippi Supreme Court had to determine whether the plaintiff had adequately pleaded a cause of action against a law enforcement officer who allowed a visibly intoxicated individual to continue to drive and eventually collide with plaintiff's vehicle. The trial court dismissed the complaint finding that the plaintiff had not pleaded that the officer acted intentionally or deliberately to establish the reckless disregard necessary to defeat immunity. *Id.* at 228 (¶4). The Supreme Court disagreed and explained that specific intent was not required, stating:

> "Disregard" of the safety of others is at least negligence if not gross negligence. Because "reckless" precedes "disregard," the standard is elevated. As quoted above from Black's Law Dictionary, "reckless," according to the circumstances, may mean desperately heedless, wanton or willful, or it may mean only careless, inattentive or negligence in the context of the [MTCA] statute, reckless must connote "wanton or willful," because immunity lies for

12

negligence.  And this Court has held that "wanton" and "reckless disregard" are just a step below specific intent."

*Id.* at 230 (¶18) (citation omitted).

¶23.    The Supreme Court defined "wantonness" as "a failure or refusal to exercise any care, while negligence is a failure to exercise due care." *Phillips*, 368 So. 3d at 324 (¶23).  In that case, the officer was responding to an accident call and activated his lights and siren to warn traffic that he was coming.  *Id.* at 326 (¶32).  He proceeded through an intersection, and while other motorists pulled aside, Phillips did not and collided with the officer's vehicle. *Id.*  The Supreme Court noted that "[r]eckless disregard usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow."  *Id.* at 324 (¶23).  The Court held that in that case, the officer's actions

> cannot be characterized as reckless and indifferent to the safety of others. Although Officer Brown may have been negligent, his actions do not evince an "entire abandonment of any care."

*Id.*

¶24.    Recently, in *Maxwell*, 2023 WL 2132171, at *3 (¶32), we concluded that

> [r]eckless disregard denotes more than mere negligence, but less than an intentional act. Further, reckless disregard is found when the conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved.

In that case, as a Panola County sheriff's deputy was crossing a four-lane highway with a grassy median, he stopped before crossing the first two lanes but allegedly failed to stop at the intersection with the second set of lanes.  *Id.* at *1 (¶5).  He collided with William and

13

Lynda Irwin's vehicle, resulting in both their deaths. *Id.* The deputy insisted that he stopped, made sure the traffic was "clear," and that he "did not see anything coming." *Id.* at *2 (¶20). The estates of the deceased presented expert testimony that the deputy did not stop. *Id.* at *3 (¶25). However, the trial court found that the deputy did not act recklessly, and we agreed, stating:

> Reckless disregard denotes more than mere negligence, but less than an intentional act. Further, reckless disregard is found when the conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a *deliberate disregard* of that risk and the high probability of harm involved.

*Id.* at *3 (¶32) (citing *City of Jackson v. Graham*, 226 So. 3d 608, 611 (¶10) (Miss. Ct. App 2017)). We noted that the trial court, sitting as the trier of fact, must have found the deputy's testimony that he looked but did not see the Irwins credible. *Id.* at *5 (¶41). Giving deference to the trial court, we could not say that it had erred in finding that the failures of the deputy did not constitute reckless disregard. *Id.* at (¶42).

¶25. "Judicial precedent in Mississippi has long held that we look to the totality of the circumstances when determining whether someone acted in reckless disregard." *Phillips*, 368 So. 3d at 324 (¶24) (citing *City of Vicksburg v. Williams*, 294 So. 3d 599, 602 (¶15) (Miss. 2020)). Law enforcement's traffic-based statutory violations can provide strong support that an officer was reckless, but they do not constitute "reckless disregard per se." *Phillips*, at 368 So. 3d at 324 (¶24). For example, in *Joseph v. City of Moss Point*, 856 So. 2d 548, 551 (¶9) (Miss. Ct. App. 2003), we held that an officer's failure to pay attention to

14

traffic at a stop light, prematurely moving forward, and hitting another car from behind was an act of simple negligence and nothing more, giving him immunity under the MTCA.

¶26.    An instance where law enforcement did disregard the risk and high probability of harm in the traffic violation context is found in *Maye v. Pearl River County*, 758 So. 2d 392 (Miss. 1999).  In that case, a deputy sheriff transporting two prisoners had backed up an incline to the entrance of a parking lot to then exit onto the street.  *Id.* at 392 (¶3).  At the same time, a vehicle in which May was a passenger, was pulling into the parking lot.  *Id.* at (¶3).  It honked, but the deputy sheriff still proceeded to hit Maye's vehicle.  *Id.* at (¶4).  The trial court granted the County summary judgment because it found Maye had not proven that the deputy intended to hit her.  *Id.* at 393 (¶12).  The Supreme Court disagreed, pointing out the deputy's actions of backing out, up an incline, without knowing or being able to see what was behind him, rose above simple negligence to the level of reckless disregard.  *Id.* at 395 (¶22).

¶27.    However, in *City of Clinton v. Tornes*, 252 So. 3d 34, 39 (¶17) (Miss. 2018), the Supreme Court evaluated the law enforcement's negligence as less egregious and found only simple negligence that did not rise to the level of recklessness.  In that case, a Clinton police officer was responding to a call of an intoxicated person lying outside of the Days Inn.  *Id.* at 36 (¶2).  The officer drove into the parking lot next to the Days Inn, and, because his view was blocked, he entered the road again.  *Id.* at (¶3).  At this point, his bumper struck the rear bumper of Tornes's vehicle.  *Id.*  The trial court denied the City's motion for summary

15

judgment but the Mississippi Supreme Court reversed and rendered judgment in the City's favor. *Id.* at 35 (¶1). The Court stated:

> Thus, to be "reckless" for purposes of Section 11-46-9(1)(c), the conduct must be "willful or wanton," not merely negligent. Reckless disregard occurs when the conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved.

*Id.* at 38 (¶13) (citation and internal quotation marks omitted). The Court found that the facts presented did not support a level of conscious indifference to the consequences, *id.* at (¶15), and "because his actions did not rise above simple negligence, police-protection immunity applied." *Id.* at 39 (¶17). Similarly in *Vo v. Hancock County*, 989 So. 2d 414, 417 (¶10) (Miss. Ct. App. 2008), we held that a trial court did not err in granting the County's motion for summary judgment because a deputy's backing out of a parking space without looking both ways did not constitute reckless disregard.

¶28.    In the case at hand, we agree with the trial court that Tacorchick was merely negligent and did not act with reckless disregard. According to Tacorchick, he slowed and stopped at the intersection. He said he saw Lemay but misjudged her speed when he prematurely turned. Although he clearly intended to turn, there is no evidence that he intended to hit Lemay or cause her injury. It cannot be said that his turning was so unreasonable that it reflected a *deliberate disregard* for the consequences of his actions. Tacorchick admitted his negligence, but his actions were not grossly negligent exhibiting a wanton disregard for Lemay and other traffic. Immunity attaches for simple negligence which the facts of this

16

case present, and the circuit court did not err by granting the City summary judgment.[4]

**Conclusion**

¶29.   Because Tacorchick was engaged in police protection activities and because the accident was caused by his simple negligence, and not actions reflecting a reckless disregard for Lemay's safety, under the Mississippi Tort Claims Act, the City is immune.  Accordingly, we affirm the circuit court's grant of summary judgment on this basis.

¶30.   **AFFIRMED.**

**BARNES, C.J., GREENLEE, WESTBROOKS, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.  CARLTON AND WILSON, P.JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., NOT PARTICIPATING.**

---

[4]   The circuit court also found that Lemay could not recover because Lemay was speeding, and thus engaged in criminal activity at the time of the accident.  We disagree with the circuit court because the official accident report reflects that Lemay was not speeding, and she testified that at the time of the accident she was going the speed limit.  The City presented no proof to rebut this.  However, we need not discuss this issue in depth because it does not change our holding that the circuit court did not err in its finding the City immune under the police protection exemption of the MTCA.